IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN M. CICCHIELLO,<br>Plaintiff | : | No. 3:07cv2338 |
| v. | : | (Judge Munley) |
| JEFFREY A. BEARD,<br>ROBERT D. SHANNON,<br>THOMAS KOWALSKY,<br>MARIROSA LAMAS,<br>MICHAEL WENEROWICZ, and<br>DONNA JONES,<br>Defendants | : | |

## **MEMORANDUM**

Before the court for disposition is the defendants' motion for summary judgment (Doc. 48). Having been fully briefed, the matter is ripe for disposition.

## **BACKGROUND**

This is a retaliation and wrongful termination action concerning the January 2007 termination of Plaintiff Joan Cicchiello ("Plaintiff") from her position as a registered nurse at the State Correctional Institution at Frackville, Pennsylvania ("SCI-Frackville"). All defendants ("Defendants") are current or retired employees of the Pennsylvania Department of Corrections ("DOC"). (Defs.' Statement of Material Facts ¶ 2 (Doc. 49)).[1] Defendants include Jeffrey A. Beard, Secretary of the DOC; Robert D. Shannon, Superintendent of SCI-Frackville until his retirement in September 2009; Thomas Kowalsky, Personnel Director of SCI-Frackville; Marirosa Lamas, Deputy Superintendent for Centralized Services of SCI-

---

[1] Under Local Rule 56.1, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Unless otherwise noted, we cite to Defendants' Statement of Material Facts (Doc. 49) when undisputed by Plaintiff.

Frackville from August 2005 to September 2006; Michael Wenerowicz, former Deputy Superintendent for Centralized Services and current Superintendent of SCI-Frackville; and Donna Jones, Nursing Supervisor and Plaintiff's immediate supervisor during the time period prior to Plaintiff's termination.  (Id. ¶¶ 3-8, 12).

Prior to her termination on January 16, 2007, Plaintiff had been employed by the DOC since 1994, when she began working at the State Correctional Institution at Muncy, Pennsylvania, as a registered nurse.  (Id. ¶¶ 9, 58).  In July 2004, Plaintiff transferred to a registered nurse position at SCI-Frackville.  (Id. ¶ 10).  There, Plaintiff was responsible for providing medical care to inmates, including "dispensing medication . . . , making assessments, taking off orders, making walking visits and working in clinics."  (Id. ¶ 11).  In addition, Plaintiff believed she was required to report nursing violations as part of both her work responsibilities and her nurse licensing requirements.  (Id. ¶¶ 14, 15).

On May 19, 2006, Plaintiff attended a labor/management meeting where she raised the issue that nurses at SCI-Frackville were dispensing psychotropic medications with expired prescriptions in violation of DOC policy and nurse licensing requirements.  (Id. ¶¶ 17, 32).  Following the meeting, Defendant Shannon instructed Defendant Lamas and Defendant Jones to investigate the problem.  (Id. ¶ 33).  After confirming that psychotropic medications were being dispensed with expired orders, a new policy was instituted.  (Id. ¶¶ 34-35).  The new policy required nurses to obtain a telephone order from the on-call psychiatrist until the inmate could be seen by a psychiatrist in-house.  (Id. ¶ 35).

In July 2006, the Mental Health Unit discovered that nursing staff were violating the new policy by again dispensing medications with expired orders.  (Id. ¶ 36).  The parties dispute whether Defendant Jones was

2

aware of such violations prior to July 2006. (Id. ¶ 37; Pl.'s Statement of Material Facts ¶ 37 (Doc. 52)).

On October 13, 2006, Plaintiff examined an inmate ("Inmate Duffy") at sick call. (Id. ¶ 44). The following day, she ordered medication for the inmate. (Id.) The parties dispute whether Plaintiff had the required doctor's authorization prior to ordering the medication. (Id.; Doc. 52 ¶ 45). Plaintiff maintains she ordered the medication with the verbal authorization of Nurse Practitioner Ron Slivka. (Doc. 52 ¶ 44). On October 23, 2006, Plaintiff was directed to report to a fact-finding investigation regarding the incident. (Doc. 49 ¶ 43; Doc. 49-9 (Ex. M)). The investigation took place on October 27, 2006. (Doc. 49-9 (Ex. M)).

On October 29 and 30, 2006, Plaintiff filed two separate written complaints using DC-121 forms against Tracy Frantz ("Frantz"), a licensed practical nurse subordinate to Plaintiff. (Doc. 49 ¶ 18; Doc. 49-8 (Ex. H, Ex. I)). The first complaint alleged that Frantz repackaged medications without a pharmacology license in violation of DOC policy and nurse licensing requirements, and the second alleged that Frantz came to work "booze sick." (Doc. 49 ¶¶ 18, 19, 22).

On November 1, 2006, Eileen Motuk ("Motuk") filed a Commonwealth Employee Witness Statement in which she reported inappropriate comments made by Plaintiff. (Id. ¶ 49; Doc. 49-10 (Ex. Q)). Motuk reported that Plaintiff said "she was conversing with RN Pavlock that morning and [said that Pavlock] is part of this and someday [Pavlock will] be paying [Plaintiff] rent for her house because she'll lose it." (Doc. 49-10 (Ex. Q)). Motuk also reported that Plaintiff "stated that her boss in Muncy. . . had an aneurysm and died from all the stress she put her through." (Id.) Plaintiff denies she made such comments. (Doc. 52 ¶ 49). Plaintiff alleges that Registered Nurse Joan Pavlock ("Pavlock") was harassing her. (Id. ¶¶

3

48-49). Plaintiff maintains she told Pavlock, "I've gone to see my lawyer. Please stop this harrassment in the workplace. You need to stop." (Id. ¶ 48). In addition, Plaintiff says she told Pavlock that if the harrassment did not stop, Plaintiff would file a lawsuit of harassment against her. (Id. ¶ 49).

On November 2, 2006, Defendant Jones and Defendant Wenerowicz spoke with Plaintiff and notified her that "some of her inappropriate comments were causing a hostile work environment in the Medical area . . . ." (Doc. 49 ¶ 47; Doc. 49-9 (Ex. O)). Defendant Wenerowicz reported he told Plaintiff "that if her behavior continued, she would be held accountable for her actions. At that time, she stated she understood her job description/duties and would not go outside her assigned duties. She would not make anymore [sic] inappropriate comments to staff." (Doc. 49-9 (Ex. O)). Plaintiff denies she made inappropriate comments to staff. (Doc. 52 ¶ 47).

On November 6, 2006, Correctional Officer Eugene McCormick ("McCormick") filed a Commonwealth Employee Witness Statement in which he reported inappropriate comments made by Plaintiff. (Doc. 49 ¶ 48; Doc 49-9 (Ex. P)). McCormick reported that Plaintiff stated "she would own RN Pavlock's house if she keeps 'messing' with [Plaintiff] and that goes for [Defendant Wenerowicz] also." (Doc. 49-9 (Ex. P)). Plaintiff denies making such comments to McCormick. (Doc. 52 ¶ 48). That same day, Frantz filed a DC-121 form reporting that Plaintiff was spreading rumors about Frantz being "drunk at work" and demanding disciplinary action. (Doc. 49 ¶ 50; Doc. 49-10 (Ex. R)). Plaintiff denies she was spreading rumors, maintaining she "was merely stating the truth." (Doc. 52 ¶ 50).

By a letter dated November 7, 2006, Plaintiff was suspended from

4

her position pending a fact-finding. (Doc. 49 ¶ 51). Defendants allege Plaintiff was suspended "[a]s a result of the staff complaints and the ongoing investigation into dispensing medication without a valid order" (id.); however, Plaintiff maintains she was suspended in retaliation for her complaints about Frantz and her reports of illegal packaging and dispensing of medications. (Doc. 49 ¶ 51; Doc. 52 ¶¶ 51, 94). On November 21, 2006, a fact-finding was held to determine whether "any violations of Policy and/or Code of Ethics ha[d] occurred." (Doc. 49 ¶ 52; Doc. 49-10 (Ex. T)). On December 4, 2006, Plaintiff was notified that a Pre-Disciplinary Conference ("PDC") had been scheduled in order to give Plaintiff an opportunity to respond to the following charges:

1. Conduct Unbecoming of a Department of Corrections Registered Nurse/Poor work performance/negligent behavior; in that [Plaintiff];
    A. Diagnosed, prescribed and dispensed medication to FZ-6129 Inmate Duffy On October 14, 2006 without a valid physician's order.
2. Misconduct in the workplace/Intimidation/ Threatening remarks in the Workplace; in that [Plaintiff];
    A. Made threatening statements indicating [Plaintiff] would own RN Pavlock's and Deputy Wenerowicz's houses if they kept messing with [Plaintiff];
    B. Intimidated LPN Tracy Frantz by filing inaccurate DC-121's on 10/29/06 and again on 10/30/06 which insinuated that she was under the influence of alcohol and also not practicing proper nursing procedures according to the Licensed Practical Nurse job duties. These allegations were also not reported to [Plaintiff's] immediate supervisor prior to or after filing the DC-121's.
    C. Intimidated staff by stating that [Plaintiff] ha[s] seen throats slashed.
    D. Stated [Plaintiff's] former boss at SCI Muncy died of an aneurysm because of all the stress [Plaintiff] put her through.

5

(Doc. 49-10 (Ex. U); Doc. 49 ¶ 53). The letter goes on to state that the charges are in violation of the following sections of the DOC 13.2.1 Access to Health Care Procedures Manual:

> Section B, #10 - . . . Employees are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated.
> Section B, #14 - . . . Employees will promptly report to their supervisor any information which comes to their attention and indicates violation of the law, rules, and/or regulations of the Department of Corrections by either an employe [sic] or an inmate. . .
> Section B, #22 - . . . An employee shall submit any necessary and/or requested work related reports in a timely manner in accordance with existing regulations. Reports submitted by employees shall be truthful and no employee shall knowingly enter or cause to be entered any inaccurate, false, or improper information or date, or misrepresent the facts in any Department record or report.

(Id.)

The PDC was held on December 11, 2006. (Doc. 49 ¶ 54). The following day, Defendant Kowalsky reported the PDC findings to Defendant Shannon. (Id. ¶ 55). After receiving approval from the Labor Relations Division in the central office, Defendant Shannon proceeded with the dismissal. (Id. ¶¶ 56-57). On January 16, 2007, Plaintiff was notified by letter that she was terminated based on the charges affirmed by the PDC Committee, which included charges 1A, 2A, 2B, and 2D as enumerated supra page 5.[2] (Doc. 49-12 (Ex. Z)). Charge 2C was removed from the charges. (Id.) The PDC Committee also affirmed that Plaintiff violated

---

[2] The letter is dated January 16, 2006, but it appears the date was erroneous. (Doc. 49 ¶ 58 n.1).

Section B #10, #14, and #22 of the DOC 13.2.1 Access to Health Care Procedures Manual, supra pages 5 and 6. (Id.)

Plaintiff's amended complaint (Doc. 20), filed August 25, 2008, raises two counts, each against all defendants. Count I, brought pursuant to 42 U.S.C. § 1983, alleges that Defendants' actions in terminating Plaintiff violated her First and Fourteenth Amendment rights. (Doc. 20 ¶¶ 55-60). Count II alleges state-law wrongful termination in violation of public policy. (Id. ¶¶ 61-85). The parties engaged in discovery, which ended February 28, 2010. (See Doc. 39). On March 31, 2010, Defendants moved for summary judgment (Doc. 48), bringing the case to its present posture.

**JURISDICTION**

As this case is brought pursuant to 42 U.S.C. § 1983 for constitutional violations, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

This court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**LEGAL STANDARD**

Before the court is the defendants' motion for summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v.

Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

Defendants have moved for summary judgment on all of Plaintiff's claims. We consider, in order, whether Defendants are entitled to summary judgment on (a) Plaintiff's First Amendment retaliation claim, (b) Plaintiff's Fourteenth Amendment claim, (c) the defense of qualified

8

immunity, and (d) Plaintiff's state-law wrongful termination claims.

## A. First Amendment Claim

Plaintiff claims she was terminated in retaliation for engaging in activity protected under the First Amendment. (Doc. 20 ¶ 57). The Third Circuit has adopted the three-step test described in Hill v. City of Scranton to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment. See Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). First, the employee must show that his activity is protected. Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)); Green v. Phila. Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997). "Second, the employee must show that the protected activity 'was a substantial factor in the alleged retaliatory action.'" Hill, 411 F.3d at 125 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). "Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." Id. at 125. See also Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).

We first address whether Plaintiff's speech is protected under the first prong of the First Amendment retaliation test. A public employee has a First Amendment right, "in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). Under Garcetti, we must first determine whether Plaintiff's statements were made "as a citizen upon matters of public concern." Id. at 416 (quoting Connick v. Myers, 461 U.S. 138, 147 (1983)). If we find in the negative, Plaintiff fails to satisfy the public-concern requirement and her speech is not protected under the First Amendment. If we find in the affirmative, we must engage in the balancing test established in Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). In Pickering, the Court

9

explained its objective of balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. at 568. As such, we must determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Garcetti, 547 U.S. at 418.

With respect to the public-concern requirement, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48. "The content of speech on a matter of public concern generally addresses a social or political concern of the community." Borden v. Sch. Dist. of E. Brunswick, 523 F.3d 153, 169-70 (3d Cir. 2008). Though fact-sensitive, "the inquiry into the protected status of speech is one of law, not fact." Connick, 461 U.S. at 148 n.7.

Defendants argue Plaintiff's speech is not a matter of public concern because it was made pursuant to her official duties. Under Garcetti, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. Our focus turns to whether Plaintiff's expressions were made pursuant to her duties as a registered nurse at SCI-Frackville.

At a labor/management meeting in May 2006, Plaintiff reported that nurses at SCI-Frackville were dispensing psychotropic medications with expired prescriptions in violation of both DOC policy and nurse licensing requirements. Plaintiff also filed complaints against her co-worker Frantz,

10

reporting that Frantz was re-packaging medications without a pharmacology license and working "booze sick." The fact that Plaintiff expressed her views internally to supervisors, rather than publicly, is not dispositive. See Garcetti, 547 U.S. at 420. The controlling issue is whether Plaintiff was expected, pursuant to her job duties, to report such problems to her supervisors. Plaintiff does not dispute that as part of both her job duties as well as her nurse licensing requirements, it was her responsibility to report nursing violations to her employer. Because Plaintiff's expressions were made in her capacity as a registered nurse, her speech is not a matter of public concern and does not enjoy First Amendment protection.[3] Our holding is consistent with the Court's emphasis on the importance of "affording government employers sufficient discretion to manage their operations" in Garcetti:

> Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission. . . . If [supervisors think a communication is] inflammatory or misguided, they [have] the authority to take proper corrective action.

Id. at 422-23.

Because we hold as a matter of law that Plaintiff's speech is not protected, we award summary judgment to the Defendant on Plaintiff's First Amendment claim. We decline to address whether prongs two and three of the First Amendment retaliation test warrant summary judgment.

---

[3] Because we find that Plaintiff's speech was not of public concern, we have no occasion to decide whether the DOC had adequate justification for treating Plaintiff differently from any other member of the general public.

See Hill, 411 F.3d at 125.

## B. Fourteenth Amendment Claim

In her amended complaint, Plaintiff claims Defendants "depriv[ed] her of her constitutionally protected right to free speech and other rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution. . . ." (Doc. 20 ¶ 57). Because Plaintiff does not make specific claims beyond the free speech claim discussed supra, there are no disputed material facts with respect to any Fourteenth Amendment violation. Thus, the parties are entitled to judgment as a matter of law on this claim.

In addition, Plaintiff makes no response to Defendants' arguments for summary judgment on Plaintiff's Fourteenth Amendment claim. We find that Plaintiff's failure to address this claim in her brief in opposition constitutes an abandonment of the claim. See Ankele v. Hambrick, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (finding summary judgment appropriate on Fourteenth Amendment malicious prosecution claim because plaintiff made no response to defendant's argument, and thus waived his opportunity to contest that claim), aff'd, 136 F. App'x. 551 (3d Cir. 2005); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11 Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Because Plaintiff fails to establish a prima facie case of any Fourteenth Amendment violation and fails to address the claim in her brief in opposition, we will award summary judgment to the Defendants on this claim.

## C. Qualified Immunity

Defendants contend they are entitled to summary judgment on Plaintiff's claims because they are shielded from liability by the doctrine of

12

qualified immunity. Qualified immunity protects public officials "'from undue interference with their duties and from potentially disabling threats of liability.'" Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (quoting Elder v. Holloway, 510 U.S. 510, 514 (1994)). The doctrine does not apply when state officials "violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. at 599-600 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)). Therefore, the court must examine: (1) whether the officials violated a constitutional right, and (2) whether that right was clearly established at the time. Id. In the instant case, because we find no violation of Plaintiff's First or Fourteenth Amendment rights and Plaintiff has alleged no other constitutional violation, we will grant Defendants' motion for summary judgment on the issue of qualified immunity.

**D. State Law Claims**

Count II of Plaintiff's amended complaint includes a cause of action for state-law wrongful termination in violation of state and federal public policy. (Doc. 20 ¶ 82). Plaintiff contends that her "reports of illegal conduct" by Defendants were the sole reasons for her discharge and that, as a result, she was terminated in violation of public policy. (Id. ¶¶ 78, 82). Plaintiff cites "a general societal concern for qualified patient care for inmates of SCI-Frackville" as the violated public policy. (Id. ¶ 80).

We consider Plaintiff's common law claim pursuant to our supplemental jurisdiction and are bound by Pennsylvania law. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 (1938)). Pennsylvania law does not allow for a common law cause of action for wrongful discharge of an at-will employee (Geary v. U.S. Steel Corp., 456 Pa. 171, 185 (1974)); however, the Supreme Court of Pennsylvania and the Court of Appeals for the Third

13

Circuit have recognized an exception for discharges that violate a clear mandate of Pennsylvania public policy. See id.; McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000); Woodson v. AMF Leisureland Centers, Inc., 842 F.2d 699, 701 (3d Cir. 1988). The Supreme Court of Pennsylvania has ascertained public policy "by examining the precedent within Pennsylvania, looking to [the Pennsylvania] Constitution, court decisions and statutes promulgated by [the state] legislature." McLaughlin, 750 A.2d at 288.

In order to trigger the public policy exception to the at-will employment doctrine, Plaintiff must have been employed at-will. Although it is unclear from the record whether Plaintiff was an at-will employee of the DOC, the Supreme Court of Pennsylvania has recognized a strong presumption that all non-contractual employment relations are at-will. See id. at 287. In order to overcome the presumption that the DOC was free to fire her at will, Plaintiff must demonstrate that her termination "threatens a clear and substantial public policy" of Pennsylvania. See id. at 288.

Even if we were to find that the public policy Plaintiff points to - "a general societal concern for qualified patient care for inmates of SCI-Frackville" - is sufficiently clear and substantial, Plaintiff's claim fails on other grounds. Defendants enjoy sovereign immunity from suit for common law tort claims including the claim of wrongful termination. See 1 Pa. Cons. Stat. Ann § 2310 (reaffirming sovereign immunity as it applies to Pennsylvania and its employees); 42 Pa. Cons. Stat. Ann §§ 8521-22 (waving sovereign immunity only for enumerated acts, none of which is a claim of wrongful termination). Plaintiff offers no argument as to why Defendants are not immune from suit for violating the public policy Plaintiff points to in her amended complaint. Thus, Defendants are entitled to summary judgment on Plaintiff's common law claim for wrongful

termination.

Plaintiff presents a new state law claim in her brief in opposition under the Pennsylvania Whistleblower Law, 43 PA. CONS. STAT. ANN. §§ 1421-28. Section 1423(a) states:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

In contrast to Plaintiff's common law wrongful termination claim, the Whistleblower Law provides a right of action against employees of the Commonwealth of Pennsylvania. See 42 PA. CONS. STAT. § 1424(d) (providing a remedy for civil service employees who contest a civil service action).

Defendants argue Plaintiff waived any allegation regarding the Whistleblower Law by not including it in the amended complaint. "It is well established that a plaintiff may not attempt to amend a complaint through a brief in opposition to a motion for summary judgment." Melrose, Inc. v. City of Pittsburgh, No. 02-1161, 2008 WL 4449687, at *13 (W.D. Pa. Sept. 30, 2008). See, e.g., Treaster v. Conestoga Wood Specialties Corp., No. 4:09-cv-632, 2010 WL 2606481, at *3 (M.D. Pa. June 25, 2010) ("[C]ourts need not consider additional claims that are raised for the first time in briefing.").

Even if we were to find that Plaintiff did not waive the Whistleblower Law claim, however, we find that the claim is barred by its statute of limitations. Under section 1424(a) of the Whistleblower Law, "a person who alleges a violation of this act may bring civil action. . . within 180 days after the occurrence of the alleged violation." Plaintiff filed her initial

15

complaint on December 27, 2007, (see Compl. (Doc. 1)); accordingly, the Whistleblower Law's statute of limitations bars any claims that accrued before June 30, 2007. Plaintiff was terminated on January 16, 2007. (Doc. 49-12 (Ex. Z)). Thus, Plaintiff's Whistleblower Law claim is time-barred. Our holding as to the statute of limitations is supported by several state court decisions finding that "courts have no discretion to extend [the 180-day time period]." O'Rourke v. Pa. Dep't. of Corrs., 730 A.2d 1039, 1042 (Pa. Commw. Ct. 1999); Perry v. Tioga County, 649 A.2d 186, 188 (Pa. Commw. Ct. 1994) ("Any contrary interpretation would make this provision meaningless.").

Because we find that Plaintiff's claim of common law wrongful termination does not provide a right of action against Defendants and Plaintiff's Whistleblower Law claim is improperly pled and time-barred, we will grant Defendants' motion for summary judgment on Plaintiff's state law wrongful termination claims.

**CONCLUSION**

For the reasons stated above, the court will grant Defendants' motion for summary judgment on all of Plaintiff's claims. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN M. CICCHIELLO,<br>**Plaintiff**<br><br>v.<br><br>JEFFREY A. BEARD,<br>ROBERT D. SHANNON,<br>THOMAS KOWALSKY,<br>MARIROSA LAMAS,<br>MICHAEL WENEROWICZ, and<br>DONNA JONES,<br>**Defendants** | No. 3:07cv02338<br><br>(Judge Munley) |

## ORDER

**AND NOW**, to wit, this 21st day of July 2010, upon consideration of Defendants' motion for summary judgment (Doc. 48), it is HEREBY **ORDERED** that the motion is **GRANTED** on all of Plaintiff's claims.

The Clerk of Court is directed to **CLOSE** the case.

                                    **BY THE COURT:**

                                    s/ James M. Munley
                                  **JUDGE JAMES M. MUNLEY**
                                  **United States District Court**